UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| DELENA M. VOSHELL,<br><br>Plaintiff,<br>v.<br><br>MICHAEL J. ASTRUE, Commissioner of<br>Social Security Administration,<br><br>Defendant. | No. CASE NO. C08-5675FDB<br><br>REPORT AND RECOMMENDATION<br><br>Noted for August 28, 2009 |

This matter has been referred to Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by <u>Mathews, Secretary of H.E.W. v. Weber</u>, 423 U.S. 261 (1976). This matter has been briefed, and after reviewing the record, the undersigned recommends that the Court affirm the administration's decision.

## INTRODUCTION AND PROCEDURAL HISTORY

Plaintiff Delena Voshell was born in 1961. She has a high school education and is a certified nurse's assistant. Tr. 1170. Plaintiff worked for over twenty years as a nursing

REPORT AND RECOMMENDATION - 1

assistant. Tr. 186. She stopped working in November 2000. She has sustained three or four on-the-job injuries to her lower back while lifting. Tr. 1167-68.

On June 5, 2002, Plaintiff filed an application for social security disability insurance benefits. Tr. 163-167. She alleges she has been unable to do any work since November 2000 due to back pain, depression, and fibromyalgia. Tr. 185.

On July 27, 2004, an administrative law judge ("ALJ") found Plaintiff not disabled. Tr. 39-51. The ALJ found, based on testimony from a vocational expert, that Plaintiff retained the ability to perform certain types of light work. Tr. 50. Plaintiff appealed to the Administrations' Appeals Council, which granted the request for review. Tr. 52-56. The Appeals Council remanded the matter, specifically directing the ALJ to further evaluate all the medical opinion evidence, Plaintiff's credibility, and the lay witness statements. Tr. 53-54.

On January 12, 2006, Plaintiff appeared and testified at a subsequent remand hearing. Tr. 1294-1351. Medical expert, Dr. C. Richard Johnson, also appeared and testified, as did vocational expert, Ms. Mary Lou Minton. Tr. 1294-1351. (check transcript as this is the same citation as the one for Plaintiff's testimony.) A supplemental hearing was held on October 16, 2006, to obtain the testimony of another vocational expert, Mr. Paul Prachyl. Tr. 1352-1371. Plaintiff did not appear at this second hearing, but her attorney was present.

On February 21, 2007, the ALJ issued her decision, again finding Plaintiff retained the ability to perform other work existing in significant numbers. Tr. 19-35. The Appeals Council denied Plaintiff's request for review on September 8, 2008, making the ALJ's decision the Commissioner's final administrative decision. Tr.10-13; 20 C.F.R. §§ 404.1481, 422.210.

Plaintiff now seeks judicial review of the administration's denial of her application for social security benefits. Plaintiff raises the following four issues:

REPORT AND RECOMMENDATION - 2

1. Whether the ALJ committed legal error when the she allegedly substituted her opinion regarding Ms. Voshell's psychiatric conditions for that of the attending medical expert who presented competent medical evidence?

2. Whether the ALJ committed legal error when she found that, although Ms. Voshell's restrictions, which allegedly preclude the full range of sedentary and light work, she is not disabled pursuant to 20 C.F.R. § 404.1569?

3. Whether the ALJ committed legal error when she applied the above medical vocational guidelines when the majority of medical information allegedly indicates Ms. Voshell has nonexertional limitations?

4. Whether the appropriate remedy is reversal with an award of benefits or remand for a supplemental hearing with a new ALJ when the record is complete?

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. Bayliss v. Barnhart, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 201 (1971); Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir.1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir.1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. Id.

Plaintiff bears the burden of proving that he or she is disabled within the meaning of the Social Security Act (the "Act"). Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Plaintiff is disabled under the Act only if his or her impairments are of such severity that he or she is unable to do her previous work, and cannot, considering his or her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

## **DISCUSSION**

### *1. The ALJ Properly Evaluated the Medical Evidence*

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir.1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. However, the ALJ "need not discuss all evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir.1984) (citation omitted). The ALJ must only explain why "significant probative evidence has been rejected." Id.

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. Lester, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social

REPORT AND RECOMMENDATION - 4

Security Administration, 359 F.3d 1190, 1195 (9th Cir.2004); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir.2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir.2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

The ALJ is entitled to resolve conflicts in the medical evidence. Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987). The ALJ may not, however, substitute his or her own opinion for that of qualified medical experts. Walden v. Schweiker, 672 F.2d 835, 839 (11th Cir. 1982). If a treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for doing so. Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983). "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." Lester, 81 F.3d at 831. In Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989), the Ninth Circuit upheld the ALJ's rejection of a treating physician's opinion because the ALJ relied not only on a nonexamining physician's testimony, but in addition, the ALJ relied on laboratory test results, contrary reports from examining physicians and on testimony from the claimant that conflicted with the treating physician's opinion.

Here, after reconsidering the medical evidence as directed by the Appeals Council, the ALJ concluded had one severe impairment: degenerative lumbar disc and joint disease. Tr. 23, 34. The ALJ further noted, "Other conditions appear in the record from time to time, but they are more than transient or did not cause significant limitations. Any such impairment is not

REPORT AND RECOMMENDATION - 5

severe. Of specific note, her alleged mental disorders and fibromyalgia are not severe, as fully discussed below." *Id*. The undersigned has carefully reviewed the medical evidence of record. The ALJ's decision provides "specific and legitimate reasons" for rejecting the treating physician's opinions and the decision is supported by substantial evidence. Therefore, the undersigned finds no legal error.

Plaintiff argues that the ALJ erred in not finding depression and/or chronic adjustment disorder and dysthymia, severe mental impairments. Plaintiff argues the ALJ erroneously ignored medical evidence (Dr. Snodgrass's and Dr. Harrison's opinions) supporting her allegations of mental impairments and instead substituted her own opinion. This court is not persuaded.

The ALJ was presented with conflicting evidence. With specific regard to Plaintiff's mental impairments, the ALJ discussed or noted the opinions of Dr. Snodgrass, Dr. Jackson, Dr. Warner, Dr. H. Richard Johnson, Dr. Harrison, Dr. Vandenbelt, Dr. Sullivan, and Dr. C. Richard Johnson. Tr. 28-30. After reviewing the medical evidence, the ALJ wrote:

> At the hearing held on January 12, 2006, a medical expert, C. Richard Johnson, M.D., reviewed the record and attended the claimant's testimony. He stated that the claimant had some evidence of depression in the records, and alcohol abuse, which was apparently in remission. She had apparently been drinking in the summer of 2005, but that was for only two weeks and did not affect her overall functioning. He saw no evidence of moderate limitations and concluded that the claimant's depression caused only mild limitations in daily living activities, social functioning, concentration, persistence, and pace. There were no episodes of decompensation. His testimony is based on evidence of her activities and the medical reports with reasonably high GAF levels of 65. He thought that she accordingly had no functional limitations.
>
> The undersigned accepts the medical expert's testimony regarding the nature and severity of the claimant's conditions. Dr. Johnson reviewed the medical record and is the only medical expert to hear and observe the claimant's testimony. Possessing an adequate foundation for his opinions, the medical expert's views are adopted pursuant to the provisions of SSR 96-6p. The claimant does not have a severe mental impairment.

REPORT AND RECOMMENDATION - 6

Tr. 30.

The ALJ properly relied on the opinion of Dr. Johnson, and discounted the opinions of Dr. Snodgrass and Dr. Harrison. The ALJ explained that Dr. Snodgrass's opinion was not being adopted because it lacked objective medical support, i.e., it was based primarily on Plaintiff's subjective reports. The ALJ explained that Dr. Harrison's evaluation was better because it included objective testing of Plaintiff. However, Dr. Harrison assessed "moderate" limitations, which the ALJ noted was inconsistent with the medical expert's opinion. Supporting the medical expert's conclusion of only mild limitations, the ALJ stated he gave deference to the opinions of: Dr. Jackson, who reported a GAF of 65 and only temporary or a brief period of mental limitations; and Dr. Vandenbelt, who evaluated Plaintiff and who opined Plaintiff had a GAF of 60-65 with no psychiatric reason why she could not return to work. The ALJ stated she was giving "very substantial weight" to Dr. Vandenbelt's evaluation. Tr. 29.

In sum, the ALJ properly weighed the conflicting evidence and properly relied on the opinions of Dr. Jackson, Dr. Vandenbelt, and Dr. C. Richard Johnson, to conclude that Plaintiff did not suffer from any severe mental impairment. The court notes that the medical records could have probably been interpreted in the manner plead by Plaintiff. However, it is worth repeating that while the court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the ALJ or the Commissioner. Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). Moreover, when the evidence is susceptible to more than one rational interpretation, as it may be in this matter, it is the ALJ's conclusion that must be upheld. Id.

***2. The ALJ Did Not Err When She Relied On The Medical Vocational Guidelines***

Plaintiff next argues the ALJ erred "when she determined that Plaintiff was not disabled pursuant to 20 C.F.R. § 404.1569 and Rules 201.29 and 202.21 on the basis that although the Claimant could not perform the full range of sedentary to light work she was capable of performing other work that exists in substantial numbers." Plaintiff's Opening Brief (Doc. 12) at 11. Plaintiff also argues the ALJ could not rely on the "Grids" because she has nonexertional limitations.

At step-five of the ALJ's analytical process used to determine disability, the ALJ will generally refer to Medical Vocational Guidelines ("GRIDS"). The ALJ may apply GRIDS, when appropriate, to meet her burden at step-five instead of taking testimony from a vocational expert. *See* Reddick v. Chater, 157 F.3d 715, 729 (9th Cir. 1998).

The GRIDS correlate a claimant's age, education, previous work experience, and residual functional capacity to direct a finding of either disabled or not disabled. The ALJ must apply the GRIDS if a claimant suffers only from an exertional impairment. 20 C.F.R. Part 404, Subpart P, Appendix 2, §§ 200.00(a) & (e) (1988). However, where a claimant suffers solely from a nonexertional impairment, the grids do not resolve the disability question and other testimony is required. Id. at § 200.00(e)(1). When a claimant suffers from both exertional and nonexertional impairments, the ALJ must first consult the grids to determine whether a finding of disability can be based on the exertional impairments alone. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(e)(2). However, if the exertional impairments alone are insufficient to direct a finding of disability, the ALJ must use the grids as a framework but must independently examine the additional consequences resulting from the nonexertional impairment(s). Id. at 1156.

REPORT AND RECOMMENDATION - 8

Plaintiff's argument that the ALJ improperly utilized the GRIDS in this matter is misplaced. As outlined above, the ALJ properly referenced the GRIDS, and then the ALJ utilized the testimony of a vocational expert to ultimately satisfy the burden of showing Plaintiff retained the ability to perform other certain jobs within the national economy. The ALJ specifically stated, "A strict application of the rules is not possible because the claimant's other limitations narrow the range of work she can perform." Tr. 32. Plaintiff's argument does not acknowledge the fact that the ALJ did not rely solely on the GRIDS at step-five. In addition, Plaintiff's argument, based Plaintiff's alleged severe mental impairments, is meritless since, as discussed above, the ALJ properly found Plaintiff did not suffer from any severe mental impairment.

### *3. The ALJ Properly Evaluated Plaintiff's Residual Functional Capacity*

"[R]esidual functional capacity" (RFC) is "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. § 404, Subpart P, App. 2 § 200.00(c) (emphasis added). In evaluating whether a claimant satisfies the disability criteria, the Commissioner must evaluate the claimant's "ability to work on a sustained basis." 20 C.F.R. § 404.1512(a). The regulations further specify: "When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis." Id. at § 404.1545(b). If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted. 20 CFR § § 404.1527, 416.927.

Plaintiff's RFC was assessed by the ALJ as follows:

> From the alleged onset date to June 10, 2002, the claimant retained the residual functional capacity to lift 10 pounds seldom, 5 pounds occasionally and 3 pounds frequently. She could only carry 8 pounds seldom, 4 pounds occasionally and 2 pounds frequently. She could push/pull 15 pounds seldom and 5 pounds

REPORT AND RECOMMENDATION - 9

> frequently. She could sit 4 hours in an 8-hour workday, in 2-hour increments, and stand/walk 3 hours each in a workday in 1-hour increments. She could seldom bend, squat and climb, occasionally kneel, and never crawl. She could occasionally to frequently reach, and frequently sustain grip. She could write, keyboard, file, and grasp in 20-30 minute increments. She could have occasional exposure to vibration. Every 20 minutes she needed to take a one-minute rest break.
>
> From June 11, 2002 through the date last insured, the claimant could lift and carry 25 pounds occasionally, without other limitations.

Tr. 34. The ALJ further explained that Plaintiff was able to perform only a limited range of sedentary and light work during the relevant time period. Id.

After reviewing the record, the undersigned finds the ALJ's RFC finding it is properly supported by substantial evidence. The medical evidence relied upon by the ALJ supports the RFC assessment. As discussed above, the ALJ properly relied on the mental evaluations performed by Dr. Vandenbelt and the opinion of the medical expert to conclude Plaintiff is not limited by a mental impairment. Similarly, the ALJ properly rejected Plaintiff's allegation that she has impairments related to fibromyalgia that should have been considered by the ALJ when she assessed Plaintiff's RFC. The ALJ explained:

> The claimant has also been seen for fibromyalgia pain, and with positive trigger points to support that diagnosis. Her tenderness was rather mild, however, and the claimant was otherwise bright and attentive (exhibits 35F; 36F:3). By April 2000 the claimant was reportedly "dramatically" improved with medication (exhibit 36F:3). Dr. Broman evaluated the claimant in September 2001 and found no upper extremity difficulty other than subjective complaints of 16/18 fibromyalgia tender points, and no findings with respect to her low back pain (exhibit 6F).

Tr. 30. The ALJ properly weighed the evidence and reasonably concluded that no limitations were due to fibromyalgia.

In sum, Plaintiff argues the ALJ's RFC finding does not address or include all of her limitations, nor did the hypothetical posed to the vocational expert include Plaintiff's mental

REPORT AND RECOMMENDATION - 10

impairments and/or fibromyalgia. Plaintiff's argument is premised, in large part, on the contention that the ALJ erred when she evaluated Plaintiff's alleged mental limitations and fibromyalgia. As discussed above, the ALJ properly considered the medical evidence and he discounted or rejected certain opinions relied on by Plaintiff to make this argument. The court finds no error in the ALJ's evaluation and assessment of Plaintiff's RFC.

### *4. The Appropriate Remedy in this Case is to Affirm the Administrative Decision.*

Because this court recommends that the administrative decision be affirmed, there is no reason for this court to address plaintiff's argument that the appropriate remedy is reversal rather than remand.

## CONCLUSION

Based on the foregoing discussion, the Court should affirm the administrative decision. Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on August 28, 2009, as noted in the caption.

DATED this 7th day of August, 2009.

/s/ J. Richard Creatura  
J. Richard Creatura  
United States Magistrate Judge